United States Courts Southern
District of Texas
FILED

*01/30/2023*

Nathan Ochsner, Clerk of Court

# IN THE US DISTRICT COURT

# HOUSTON, TEXAS

## TO THE HONORABLE JUDGE OF SAID COURT;

COMES NOW TO BE HEARD, PETITIONER NORMAN E. CARRIO PRO SE WHO RESPECTFULLY MOVES THIS COURT TO GRANT HIS APPLICATION TO PROCEED IN FORMA PAUPERIS AND WILL SHOW IN GOOD CAUSE THE FOLLOWING;

1. PETITIONER IS AN HONORABLY DISCHARGED, HIGHLY COMMENDATED AND TWICE DECORATED US ARMY COMBAT MEDIC WHO SERVED IN THE

CENTRAL HIGHLANDS, RVN 1966-1968.

2. HE IS CERTIFIED BY THE DEPT. OF VETERAN AFFAIRS AS A 100% DISABLED VETERAN.

3. PETITIONER CAN SHOW THAT THE DEFENDANT HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE WILLFULLY AND KNOWINGLY VIOLATED EVERY FEDERAL AND STATE CIVIL RIGHTS OF THIS PETITIONER PRIOR TO AND DURING HIS 1983 TRIAL. AS DID THE HOUSTON POLICE DEPARTMENT WHICH PARTIALLY RELEASED PORTIONS OF RECORDS AND

FILES IN HIS NAME AFTER HIS TEXAS PIA REQUESTS 26 YEARS AFTER HIS INITIAL REQUEST.

4. PETITIONER HAS ALWAYS CLAIMED AND STILL MAINTAINS THAT THESE DOCUMENTS AND FILES CAN SHOW HIS ACTUAL INNOCENCE OF ALL CHARGES . ALSO THE AGGRAVATED PERJURY PRESENTED AGAINST HIM.

5. PETITIONER PRESENTS TEXAS AG OPINION, JM-266, WHICH COMPELLED THE DEFENDANT TO RELEASE ALL DOCUMENTS AND RECORDS IN THEIR POSSESION OR AVAILABLE TO THEIR OFFICE UPON REQUEST.

*JM-266 was written in Sept 1983? Am still waiting for my copies out of my file.*

*N. Carrio*

*09 March 2022*

# to release documents

Houston Chronicle Austin Bureau

AUSTIN — Texas Attorney General Jim Mattox said Harris County District Attorney John B. Holmes Jr. must make available documents requested by inmates.

Holmes had asked whether the district attorney's office, legally within the judicial section of state government, should be subject to the Texas Open Records Act. The law allows some judiciary exceptions to the act.

The Opinion Committee of the attorney general's office, while aware that Holmes' office is a part of the judiciary, said it is also a "government body" as defined in the Open Records law and must comply with requests for documents.

The legal opinion was prompted by a request from two Texas Department of Corrections inmates who each had asked for "copies of the entire file or files pertaining to themselves which might be held in the (Harris County) district attorney's office."

Ray Speece, the general counsel for Holmes, said he is asking the attorney general's Opinion Committee to reconsider its decision. He said one of the committee's complaints was that Holmes was not specific enough in designating information that should not be made public. He said he will submit more information to Mattox.

Speece said about a half dozen simi-

United States Courts
Southern District of Texas
F I L E D

JAN 3 0 2023

Nathan Ochsner, Clerk of Court

JIM LEITNER
FIRST ASSISTANT



CRIMINAL JUSTICE CENTER
1201 FRANKLIN, SUITE 600
HOUSTON, TEXAS 77002-1901

**PATRICIA R. LYKOS**
DISTRICT ATTORNEY
HARRIS COUNTY, TEXAS

September 1, 2009

Mr. Norman Carrio
*By e-mail: necarrio@yahoo.com*

Dear Mr. Carrio:

This office is in receipt of your request for information regarding Cause Nos. 356220 and 356221. In that request, you have asked for the following:

- Witness statements
- Negotiated plea bargains with any/all witnesses, including those of Michelle Chappuis, Myra Kendall, Stephen Zawacki, and Marques Houston.
- C.E. Anderson's ballistics report
- NW Memorial Hospital reports on Stephen Zawacki
- The closing of Yank's Tavern by HPD, ATF and other agencies
- *Brady* materials
- Investigative summaries

I have carefully reviewed the existing files for these cause numbers for any information responsive to your request.

**Witness Statements.**   With respect to witness statements, I have located statements from Michelle Chappuis, Myra Kendall, Stephen Zawacki, Marques Houston, and Lori Kehoe.

**Negotiated Plea Bargains.**   With respect to negotiated plea bargains, I am assuming that you are specifically looking for records indicating that Chappuis, Kendall, Zawacki, and Houston were the beneficiaries of a plea bargain in exchange for their testimony. Unfortunately, the records related to your file do not reflect any such deals were made with these individuals. Moreover, as will be reflected below, the District Attorney's files related to any prosecution of these individuals were destroyed pursuant to an approved destruction schedule two years after their disposition, so they are not available for review.

Letter to Norman Carrio
September 1, 2009
Page 2.

I will, however, detail information from the Harris County Justice Information Management System (JIMS) database that relates to any cases that were pending between the date the case against you was filed (May 21, 1982) and the date you were convicted (April 27, 1983).

With respect to Ms. Chappuis, the JIMS database reflects that, on October 18, 1982, Ms. Chappuis was convicted in Cause No. 0663997 for violating state alcoholic beverage laws and was sentenced to three days in jail and a $300 fine. The State's file for that misdemeanor prosecution in County Criminal Court at Law No. 10 no longer exists, however, and there are no documents in your file indicating that the negotiated plea in that case was tied to any testimony she may have provided in your case.

With respect to Myra Kendall, the JIMS database reflects that, although Ms. Kendall has been prosecuted in six cases filed between April 3, 1990 and August 11, 1992, there were no cases pending against her at the time of your prosecution and there are no documents indicating that she was involved in any negotiated pleas at that time.

With respect to Stephen Zawacki, although Zawacki had two arrests in 1981 that were both resolved before your arrest in 1982 and he has had arrests in 1994 and 2004 that post-date any testimony he may have provided in your case, there are two cases that were pending during the relevant period. First, the JIMS database reflects that he had been placed on deferred adjudication for driving while intoxicated in Cause No. 0621511 on August 26, 1981 and his guilt was adjudicated on August 13, 1982, after which he was sentenced to ten days in jail and fined $50. Second, he was prosecuted for an April 11, 1982 driving while intoxicated case in Cause No. 0650459, to which he entered a plea of guilty and was sentenced to ten days in jail and fined $200 on August 13, 1982. The State's files for those misdemeanor prosecutions in County Criminal Court at Law No. 1 no longer exist, however, and there are no documents indicating that the negotiated pleas in those cases were tied to any testimony he may have provided in your case.

With respect to Marques Houston, the JIMS database reflects no cases against him other than a 1984 bad check case in the Justice Court for Precinct 4, Position 1.

**Other Reports.** The file does not include any ballistics report by C.E. Anderson, any NW Memorial Hospital reports on Stephen Zawacki, or any reports on the closing of Yank's Tavern by HPD, ATF and other agencies.

Letter to Norman Carrio
September 1, 2009
Page 3.

**Brady Materials.** As the public information officer for the District Attorney, I am not in a position to evaluate whether a particular record may constitute *Brady* evidence because I did not actually handle the prosecution of the case itself, whether at trial or on appeal, and cannot know what the defensive issues were that may have given rise to *Brady* disclosure requirements. Such an evaluation is better left to the prosecutors handling your innocence claims. Nonetheless, I have closely reviewed the available documents in the District Attorney's litigation files for Cause Nos. 356220 and 356221 and, based on my understanding of your claims, I have not identified any information not already released above that would constitute *Brady* evidence.

**Investigative Summaries.** Finally, the existing files do not appear to contain any full police offense reports. I am sending with this letter the police investigative materials that are in the file. You may wish to make a separate inquiry to the Houston Police Department for any records they may have retained related to their investigation of the May 21, 1982 shooting.

I am returning the files to the Post Conviction Review Section for their use in addressing your innocence claim.

Sincerely,

SCOTT A. DURFEE
Assistant General Counsel
Office of the District Attorney



# The Attorney General of Texas

December 21, 1984

"M MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

4 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4424 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

6 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

109 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable John B. Holmes, Jr.
Harris County District Attorney
201 Fannin, Suite 200
Houston, Texas    77002

Opinion No.  JM-266

Re:  Whether  a  district
attorney  is  subject  to  the
Open Records Act

Dear Mr. Holmes:

You have informed us that two inmates at the Texas Department of Corrections "have each requested copies of the entire file or files pertaining to themselves which might be held in the [Harris County] district attorney's office." You have asked whether the district attorney must release these files. You argue that the Open Records Act, article 6252-17a, V.T.C.S., does not require him to do so because:  (1) the office of the district attorney is part of the judicial department of state government created by article V of the Texas Constitution and therefore is within the judiciary exception to the definition of "governmental body" contained in section 2(1) of the act; (2) the district attorney's office is not a "record-generating agency," and "documents held by it that are public records should be obtained from the agency that is the legal custodian of said records"; and (3) the files are excepted from required disclosure under sections 3(a)(1), 3(a)(3), 3(a)(7), and 3(a)(8) of the act.

In response to your first argument, it is true that the office of the district attorney is part of the judicial department created by article V of the Texas Constitution. This does not mean, however, that this office is within the judiciary exception to the Open Records Act.

The office of county sheriff is also within the judicial department of state government. Tex. Const. art. V, §23. Nevertheless, in Open Records Decision No. 78 (1975), this office held that the office of sheriff is within section 2(1)(F) of the Open Records Act, which defines "governmental body" to include "the part, section, or portion of every organization, corporation, commission, committee, institution, or agency which is supported in whole or in part by public funds, or which expends public funds," and that it is not within the section 2(1)(G) judiciary exception. The decision reasoned as follows:

Honorable John B. Holmes, Jr. - Page 2   (JM-266)

> The office of sheriff is created under the
> judicial article of the Constitution . . . and is
> a part of the judicial department of the State
> government.  See State v. Moore, 57 Tex. 307
> (1882).  The Open Records Act in section 2(1)(G)
> excludes 'the Judiciary' from the definition of
> governmental body; however, we do not believe this
> exclusion operates here to remove the sheriff from
> the coverage of the Act.  It is our opinion that
> the Legislature did not use the term 'judiciary'
> to denote all those persons who are in the
> judicial department.  Thus, it is our view that a
> district court would be excluded from the opera-
> tion of the Act, while the Sheriff would not.  The
> Legislature's specific inclusion of commissioners
> courts in the Act reinforces this view since
> commissioners courts are also created in the
> judicial article of the Constitution.

In Benavides v. Lee, 665 S.W.2d 151 (Tex. Civ. App. - San Antonio
1983, no writ), moreover, the San Antonio Court of Appeals construed
the judiciary exception.  Benavides involved an appeal from a district
court order granting a writ of mandamus under the Open Records Act.
The district court had ordered a member of the Webb County Juvenile
Board to release those parts of resumes containing the qualifications
of applicants for the position of chief juvenile probation officer.
The board, however, sought to have the order overturned, arguing that
the board was an extension of the judiciary and therefore was not
subject to the act.  The court of appeals disagreed, stating:

> Appellant suggests that the Board is an exten-
> sion of the judiciary because the duties of the
> juvenile probation officer for which that officer
> answers directly to the Board are entwined with
> the functions of the judiciary.  Furthermore, all
> the Board members are members of the judiciary
> except for the county judge who has both judicial
> and non-judicial functions.
>
> Analysis should focus not on the functions of
> the probation officer but on the Board itself and
> the kind of information requested.  Since the
> applicant information was collected and used by
> the Board, the nature of the Board in part
> determines the applicability of the Open Records
> Act to Board records.  The Board is not a court.
> A separate entity, the juvenile court, not the
> Board, exists to adjudicate matters concerning

Honorable John B. Holmes, Jr. - Page 3  (JM-266)

> juveniles.  <u>Nor is the Board directly controlled</u>
> <u>or supervised by a court.</u>
>
> Moreover, simply because the Legislature chose
> judges as Board members, art. 5139JJJ, §1, does
> not in itself indicate they perform on the Board
> as members of the judiciary.  Board members are
> paid a separate salary for their Board work in
> addition to their salaries as judges.  <u>Further-</u>
> <u>more, classification of the Board as judicial or</u>
> <u>not depends on the functions of the Board</u>, not on
> members' service elsewhere in government.  <u>The</u>
> <u>Board's role</u> as described in art. 5139JJJ <u>is</u>
> <u>exclusively administrative.</u> . . .
>
> The judiciary exception, §2(1)(G), is important
> <u>to safeguard judicial proceedings and maintain the</u>
> <u>independence of the judicial branch of government,</u>
> preserving statutory and case law already govern-
> ing access to judicial records.  <u>But it must not</u>
> <u>be extended to every governmental entity having</u>
> <u>any connection with the judiciary.  The intent of</u>
> <u>the Open Records Act must not be circumvented by</u>
> <u>an unnecessarily broad reading of the judiciary</u>
> <u>exclusion.</u>  (Emphasis added).

Using these guidelines, we conclude that the office of the
district attorney is not within the judiciary exception.  This office
is not a court, nor is it directly controlled or supervised by a
court.  Its functions, moreover, are primarily executive, in the sense
that its primary duty is to enforce the law.  Code Crim. Proc. art.
2.01.

In our opinion, the office of the district attorney, like the
office of the county sheriff, clearly is supported by public funds and
therefore is within the section 2(1)(F) portion of the definition of
"governmental body" contained in the Open Records Act.  Because we are
of the opinion that this office is not within the judiciary exception
to that definition, we conclude that it is a governmental body within
the meaning of the act.

In answer to your second argument, the fact that a request for
public records might be more appropriately directed to a different
governmental body does not mean that it can be dismissed by a govern-
mental body to which it is properly directed.  Section 3(a) of the
Open Records Act provides that

> [a]ll information collected, assembled, or main-
> tained by governmental bodies pursuant to law or

Honorable John B. Holmes, Jr. - Page 4   (JM-266)

       ordinance or in connection with the transaction of
       official business is public information.

We have already concluded that the office of district attorney is a
"governmental body," and the information you have provided convinces
us that the files in question constitute "public information" under
the foregoing definition.  Unless they are excepted under section 3(a)
of the act, therefore, these files must be released.

    We now turn to your section 3(a) arguments.  First, we reject
your section 3(a)(3) argument.  You contend that this section, the
litigation exception, applies because

       the files requested are records of final convic-
       tions but these convictions remain subject to
       collateral attack so long as an inmate is con-
       fined.  A criminal defendant has standing to
       attack convictions which result from guilty pleas
       as well as jury trials by means of a writ of
       habeas corpus.  Should inmates begin receiving
       free copies of files kept by the District
       Attorney's Office, the anticipation of litigation
       is very real and very reasonable.

You have, however, done no more than show that litigation could ensue
in one or more instances.  Section 3(a)(3) is triggered, not when a
mere chance of litigation exists, but only when litigation concerning
a specific matter is either pending or reasonably anticipated.  See,
e.g., Open Records Decision No. 331 (1982).  Concrete evidence must be
adduced showing that the claim that litigation may ensue is more than
mere conjecture.  Open Records Decision No. 328 (1982).  In this
instance, you have furnished us with no concrete evidence indicating
that litigation regarding a specific matter is reasonably anticipated.

    Section 3(a)(7) excepts information concerning

       matters in which the duty of the Attorney General
       of Texas or an attorney of a political sub-
       division, to his client, pursuant to the Rules and
       Canons of Ethics of the State Bar of Texas are
       prohibited from disclosure, or which by order of a
       court are prohibited from disclosure.

This section might be applicable in this instance.  You have not,
however, cited any specific "Rules and Canons of Ethics" or court
orders which would be violated if information in the requested files
were released.  Unless you do so within ten (10) days of the issuance
of this opinion, we will conclude that section 3(a)(7) is
inapplicable.

Honorable John B. Holmes, Jr. - Page 5 (JM-266)

You also claim exceptions under sections 3(a)(1) and 3(a)(8). Section 3(a)(1), you assert, excepts the portions of the requested files which contain attorney work product, Code Crim. Proc. art. 39.14; Brem v. State, 571 S.W.2d 314 (Tex. Crim. App. 1978); information that would be tantamount to grand jury files, Code Crim. Proc. arts. 19.34, 20.02, 20.16; Open Records Decision No. 398 (1983); and information excepted under common law privacy, Billings v. Atkinson, 489 S.W.2d 858 (Tex. 1973). Section 3(a)(8), you contend, applies for the following reasons:

> The District Attorney's Office is a 'law enforcement agency' within the meaning of section 3(a)(8). Investigators who are peace officers are assigned to each felony District Court, the misdemeanor division, and the Special Crime Divisions. These investigators assist prosecutors in preparing evidence for trial. The files of the District Attorney frequently contain inter-office reports prepared by investigators for internal use.

Sections 3(a)(1) and 3(a)(8) very likely except from required disclosure some portions of the requested files. This office has repeatedly stated, however, that governmental entities which claim exceptions to the Open Records Act bear the burden of demonstrating, when such is not readily apparent, how and why those exceptions apply. In this instance, it is not at all apparent how sections 3(a)(1) or 3(a)(8) apply to some of the requested materials. What you deem "attorney work product," for example, is not clear, nor is it readily apparent how the release of some of these materials would "unduly interfere with law enforcement and crime prevention." See, e.g., Open Records Decision No. 297 (1981). Within ten (10) days of the issuance of this opinion, you must indicate which specific portions of the requested materials are, in your opinion, excepted from required disclosure under sections 3(a)(1) and 3(a)(8), and you must also indicate, where such is not readily apparent, why these sections apply. If you decline to do so, we will be compelled to conclude that these sections are not applicable.

In summary, therefore, the office of the district attorney of Harris County is a "governmental body" within the meaning of the Open Records Act. Within ten (10) days of the issuance of this opinion, you must demonstrate how and why sections 3(a)(1), 3(a)(7), and 3(a)(8) apply to specific portions of the files which have been requested. If such demonstration is not made within ten days, the files must be made available to the requestors.

Honorable John B. Holmes, Jr. - Page 6    (JM-266)

## S U M M A R Y

The office of the district attorney is a
"governmental body" within the meaning of the Open
Records Act.

Very truly yours

J I M    M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Colin Carl
Susan Garrison
Jim Moellinger
Jennifer Riggs
Nancy Sutton



# Finds $140 in Wallet

**By LARRY FIELDS**
**Press Staff Writer**

When Norman Carrio, of 2120 Gano, went to the Majestic Theater Monday all he was looking for was entertainment —but that wasn't all he found.

He found a wallet bulging with money.

The movie playing Monday was "Hud," the tale of a ruthless Texas heel.

But Norman, a 17-year-old Jefferson High School senior, is not the type to be easily influenced by a motion picture. And once he picked up the fat wallet he behaved more like The Lone Ranger than Hud.

**It's a Good Old World**

**FELL TO FLOOR**

"I found the wallet just as soon as I sat down," Norman told The Press. "As I pulled down the seat, it fell to the floor.

"I told myself, 'No, it can't be.'

"But it was, and I took it out to the lobby where it was light and opened it.

"It sure contained a lot of



**NORMAN CARRIO**
Thrifty . . . and honest.

money. I opened some of the compartments and found the name of the owner."

Norman, as thrifty as he is honest, didn't return his find immediately. After all, he paid to see the movie and "see a movie" he was going to do.

Later, going home, Norman

counted the money. It came again looked in the wallet. He had $140.

"Like any teenager, I thought of all the things I could do with that money if it were mine," Norman admitted.

"But the money didn't belong to me, and that was that. I was raised to be always honest. There were always tens and twenty dollar bills lying around my home. But I never touched it. I was taught that what was mine was mine and what wasn't mine to leave alone."

**PHONED OWNER**

The money at the theater belonged to Kenneth Benson, who lives on Schwanee, and Norman telephoned him as soon as he returned home.

Mr. Benson wasn't in. His wife told Norman she thought he was still at the movie.

So Norman telephoned the Majestic Theater and had the man paged. When Mr. Benson came to the phone he said that only a few minutes earlier he realized that his wallet was missing and was at that very second searching for it.

Mr. Benson drove out to Norman's home, picked up the wallet, and forced a $10 reward on the honest lad.

**'Lo**

Al Boynton (r?) out last night an companions, Tor (inset). Repairs group returned s

and razzing the disqu of the ring with his sk

Hunter Division—Opea
Class 67: Hallmark, ow
den by Eleanor Morgan.
Five-Gaited Divi
Class 6: Peacock Peavi
Burning Tree Farm, Minn
ridden by Randi Stuart.
Fine Harness Di
Class 20: Tashi Lin
Class Horace Cabe, Gurdon,
by Art Simmons.
Hackney Pony D
Class 39: Timber M
and ridden by Weldon
Barrington, Ill., shown t
wood.
Three-Gaited Di
Class 10: April First, r
Myrtle Moore, New O:
by Dale Milligan.
Walking Horse D
Class 47: Triple Tre
circle T, Ranch, Inc.,
by Harold Kennedy.
Shetland Pony 1
Class 87: Melody's S
C. F. Thackston, Mont;
by Mr. John Peffley.
Roadster Div
Class 27: His' Honey,
G. M. Livingston, Quitm
by Lloyd Teater.
Harness Pony T
Class 42: Pony Vista's
and Pony Vista's fai
owned by Joe Doriana
shown by John Shea.
Five-Gaited Division
Class 1: Queen of Fa:
W. C. Madlener, Top
Art Simmons.
Walking Horse
Class 52: Fair War:
Mrs. R. F. Thompson,
by Virginia Lee Thomp
Three Gaited Division

# Horse Show Thrills Keep Crowd on Edge

**By MACK BRALY**
**Press Staff Writer**

Every spectator who stayed on to the end of last night's opening at the 19th Annual Pin Oak Horse Show was helping the horses over the jumps. It sounded like the Ole's at a bullfight.

Leopold Meyer, president of the Houston Horse Show Association, called it "the best opening night ever."

For the "aficionados" there were the harness, dressage, and saddle horse classes. For the plebes there was the throat-choking glory of a fine horse sailing over a towering jump.

And sail they did.

ter, which the Fleming stables had sold to Ben O'Meara only last year.

With O'Meara up, no one was picking a winner, until the final jump-off. Barbara went first, over jumps ranging up to five feet high and five feet across, and did it in 41 seconds.

Then O'Meara, one of the toughest competitors on the circuit came in.

The crowd was startled. O'Meara seemed to be riding a different horse from the one with which he had gotten to the third jump-off. There was no hesitation, no slowness. And then on the last series of jumps, a pole-over-coop, a pole-over-panel, and a double set of poles, poles or better got raised, and

contenders in the five-gaited amateur stallion and gelding class, and walked off with the ribbons.

**HARNESS CLASSES**

The sparkling harness classes gave perennial winner Art Simmons a chance to take the harness mare stake just before going on to take the five-gaited mare class on Queen of Fashion, last year's five-gaited grand champion, owned by W. C. Madlener of Topeka, Kan.

Another show stopper came with the roadsters—the two-wheel contraptions used in harness racing.

When these light speedy 'bikes', as they are called, broke into a fast pace, while the judging was not going on, every man in the crowd understood the

CAVA Remand: 10-3896
6-14-2012

For the Veteran's Use Only



**Department Of Veterans Affairs**
550 Foothill Drive
PO Box 581900
Salt Lake City, UT 84158-1900



July 06, 2016

NORMAN E CARRIO
PO BOX 131772
THE WOODLANDS TX 77393

In Reply Refer To:  341/NCC/rle
C 24 356 014
Carrio N E

Dear Norman E Carrio,

This is in reply to your request for a statement verifying your service-connected disabilities.

Department of Veterans Affairs (VA) records show your service-connected disabilities are as follows:

| Percentage | Disability | Diagnostic Code |
|---|---|---|
| 100 | post traumatic stress disorder (PTSD) with depression effective date 12/8/2008 | 9411 |
| 20 | bilateral diabetic retinopathy with cataracts effective date 10/29/2001 | 6066 |
| 20 | diabetes mellitus with erectile dysfunction effective date 10/29/2001 | 7913 |
| 10 | peripheral neuropathy, right upper extremity effective dated 10/29/2001 | 8515 |
| 10 | peripheral neuropathy, left upper extremity effective date 10/29/2001 | 8515 |
| 10 | peripheral neuropathy, right lower extremity effective date 10/29/2001 | 8520 |
| 10 | peripheral neuropathy, left lower extremity effective date 10/29/2001 | 8520 |
| 10 | Tinnitus effective date effective date 5/9/1984 | 6260 |
| 0 | bilateral hearing loss effective 12/1/1998 | 6100 |
| 100 | **Combined Rating** | |

## Do You Have Questions or Need Assistance?

If you have any questions, you may contact us by telephone, e-mail, or letter.

| If you | Here is what to do. |
|---|---|
| Telephone | For Compensation, call us at 1-800-827-1000. If you use a Telecommunications Device for the Deaf (TDD), the number is 711. For Pension, call us at 1-877-294-6380. |
| Use the Internet | Send electronic inquiries through the Internet at https://iris.va.gov. |



HEADQUARTERS
18TH ENGINEER BRIGADE
APO 96377

GENERAL ORDERS                                                  15 January 1968
NUMBER 19

AWARD OF THE BRONZE STAR MEDAL FOR HEROISM

1. TC 320. The following Award is announced.

CARRIO, NORMAN E., RA 18725984, (SSAN 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), SPECIALIST FIVE E-5, USA
299th Engr Bn, 18th Engr Bde, APO 96377
Awarded: Bronze Star Medal with "V" Device
Date Action: 15 November 1967
Theater: Republic of Vietnam
Reason: For exceptionally valorous actions against a hostile force. On 15
November 1967, at about 1600 hours, the 15th Engineer Company (Light
Equipment) and an adjacent Ammunition Supply Point located at Dak To,
Republic of Vietnam were attacked by enemy mortars. Fires immediately
broke out in the Ammunition Supply Point causing several secondary
explosions. At approximately 1700 hours one of the men fighting the
fire was wounded by an exploding round. At the cry "Medic", Specialist
Carrio left the safety of his bunker and made his way to the wounded
man. He then assisted the wounded man over a distance of three-quarters
of a mile through exploding rounds and ever-present shrapnel, to an
evacuation point. At 2145 hours, a tremendous blast rocked the area
scattering more unexploded ammunition into the 15th Engineer Company
area which was already covered with numerous unexploded rounds. The
concussion of the blast collapsed several bunkers in the area wounding
and trapping many individuals. Specialist Carrio again left the
safety of his bunker to assist in aiding the wounded, and the digging
out of personnel from the collapsed bunkers. He then assisted in
carrying two of the more critically wounded men to a Medical Armored
Personnel Carrier. Through his courage and example Specialist Carrio
contributed immensely to the welfare of the men and the unit. His
personal bravery and devotion to duty were in keeping with the highest
traditions of the military service and reflect great credit upon him-
self, his unit and the United States Army.
Authority: By direction of the President under the provisions of Executive
Order 11046, 24 August 1962.

FOR THE COMMANDER:

OFFICIAL:

Robert J. Dotzler

ROBERT J. DOTZLER
1LT        AGC
Asst Adjutant

D. C. SMITH
Major, AGC
Adjutant

Exhibit "D"

Proud of her service in Vietnam, Evans is also "proud of my sister veterans and the men I'd taken care of," she said. "I had seen how men suffered and how they died. They had so much courage and rarely complained. I was always concerned more about the other guys rather than myself."

To honor the service of women service members, in 1984 Evans helped organize the drive to build a memorial to the American women who served in Vietnam. Nine years later, the Vietnam Women's Memorial in Washington, D.C., was dedicated on Nov. 11, 1993.

A member of Chapter 20 in Faribault, Minn., Evans turned to the DAV for help in building the memorial. "The DAV jumped right in there with us — testifying and lending support in every way," she said. "They donated almost $100,000. At every legislative hearing there was DAV representation. The DAV has helped fund every single anniversary event for the memorial."

"We are grateful to the DAV as a women veterans' advocacy group, and I am personally grateful for their support during my own claim," said Evans.

"Our National Service Officers are the finest veterans advocates around," said Reese. "It is always good to hear from someone they have helped with their claims to reaffirm that."

Today, our nation is again at war, and combat nurses are right there helping to care for the wounded and ease the suffering of war. "There is a complete bond between Iraq nurses and Vietnam nurses," Evans said. "Their experiences are the same. Their emotions and feelings are all alike."

"Today, women serve in many combat operations," she said. "That adds a whole new dimension to the fighting. I think women are coming home with some very serious issues. More are dying. Eight women died in Vietnam and in Iraq more than 100. There's the emotional trauma. They have extra weight to carry."

"The moral and ethical issues faced by women today are enormous — far more so than for the nurses who preceded them," said Evans. "All of us women have faced danger, but I don't think it's fair to make comparisons from previous wars. We are all the same."

◎

# Medal Received after 40 Years

**N**orman Carrio was listening to a tape from his mother when he heard the sound at about 3 p.m. on Nov. 15, 1967. An experienced combat medic serving with the U.S. Army 15th Engineer Company at Dak To Vietnam, Carrio knew it was incoming rockets.

North Vietnamese Army regulars were trying to knock out an ammunition dump with more than 1,000 tons of munitions less than 100 meters from the company perimeter. When the ammo dump was hit, the explosion shook the ground for miles, and for hours afterward munitions continued to explode.

A new company with only a few combat-experienced soldiers, the 15th stood its ground throughout the attack. The courage and tenacity of the soldiers resulted in the company being presented a Valorous Unit Award for actions at Dak To and Ben Het, South Vietnam.

On May 22, 2008, more than 40 years after an attack on the engineer company where Carrion served as a medic, he received a notice from the Army informing him he would receive the Republic of Vietnam Gallantry Cross with Palm Device. The omission of the award was discovered during a review of Carrio's records. Less than a month later, on June 15, 2008, former South Vietnamese Maj. Gen. Mach Van Troung formally presented the award during a ceremony at the Hong Kong Mall in Houston, Texas.



*Former South Vietnamese Maj. Gen. Mach Van Troung presents the Republic of Vietnam Gallantry Cross to Norman Carrio, a former U.S. Army medic who earned the award while serving with the Army 15th Engineer Company at Dak To, Vietnam in 1967.*

Battle of Dak To - Wikipedia, the free encyclopedia
Case 4:23-cv-00360    Document 1    Filed on 01/30/23 in TXSD    Page 19 of 38
Page 5 of 9

Blue and Charlie Company 4/503 drew the job of going to the relief of the beleaguered task force. They encountered fire from all sides during the relief attempt, but they made it, reaching the trapped men at 15:37. U.S. losses were 20 killed, 154 wounded, and two missing.

The commanding officer of Task Force Black, Captain Thomas McElwain, reported an enemy body count of 80 but was commanded by Schumacher (whose conduct of the action later came under severe criticism) to go out and count again.[19] He then reported back that 175 PAVN soldiers had been killed. He later stated that "If you lost so many people killed and wounded, you had to have something to show for it."[20] McElwain and Schumacher later clashed over McElwain's recommendation for a decoration for Private First Class John Andrew Barnes, III, who had leapt on a grenade and sacrificed his life to save wounded comrades during the action. Schumacher refused to endorse the recommendation, stating that he did not think medals were for "men who committed suicide."[21] Barnes was later awarded the Medal of Honor.



The build-up at Đắk Tô

Simultaneous with this action was a North Vietnamese attack on the three companies of the 3/8th Infantry of the 4th Infantry Division on Hill 724. Beginning at 13:07 and lasting for thirty minutes, a mortar barrage rained onto the battalion's laager site. North Vietnamese troops then charged out of the jungle to the attack. By the time the action ended at 19:03, 18 Americans were dead and another 118 were wounded. The 4th Infantry claimed that 92 North Vietnamese had died in the clash.[22]

On the night of 12 November, the North Vietnamese launched the first of many rocket attacks against the Đắk Tô airfield, firing 44 missiles. By 08:00 on 15 November, three C-130 Hercules transport aircraft were in the turnaround area as a PAVN mortar barrage landed squarely on the aircraft, destroying two of them. The resulting fires and additional incoming mortar fire caught the ammunition dump and fuel storage areas a blaze with explosions continued all day and into the night. During that night's incoming shelling, a lone mortar round landed on two steel containers of C-4 plastic explosive. Both detonated simultaneously, sending a fireball and mushroom cloud high above the valley and leaving two craters 40 feet deep. This was said to be the largest explosion to occur in the Vietnam War, knocking men off their feet over a mile away. The explosion destroyed the entire 15th Light Equipment Company compound next to the ammunition dump but miraculously no one was killed. Engineer Lieutenant Fred Dyerson thought "it looked like Charlie had gotten hold of some nuclear weapons." Although more than 1,100 tons of ordnance were destroyed during the explosions and fires, this was as close as the North Vietnamese would get to taking Dak To. The rapid deployment of allied forces had upset the North Vietnamese offensive and had thrown them onto the defensive. Previous actions had battered the 66th and 33rd PAVN Regiments, and they began a southwesterly retreat, covered by the 174th Regiment. The Americans and the ARVN then began to run into tenacious rearguard actions. To prevent a repetition of the artillery attack against its base camp, the 4th Division's 3rd Battalion, 12th Infantry Regiment was ordered to take Hill 1338, which had an excellent overview of Đắk Tô, only six kilometers away. For two days, the Americans fought their way up the steep slope of the hill and into the most elaborate bunker complex yet discovered, all of the fortifications of which were connected by field telephones.

After scouring the area of the North Vietnamese who attacked Task Force Black, the three companies of 1/503 moved southwest to occupy Hill 882. The force was accompanied by approximately a dozen civilian news correspondents. On the morning of 15 November, the lead company crested the hill and discovered bunkers connected by telephone wire. They were then attacked, and the rest of the Americans rushed to the hilltop to take defensive positions. PAVN troops poured small arms, machine gun, and mortar fire on the Americans and launched several ground attacks. The U.S. commander requested helicopter evacuation for the most seriously wounded, but this request was denied by Colonel Schumacher, who demanded that the civilians be evacuated first.[23] When the fighting ceased on 19 November the U.S. battalion had suffered seven killed and 34 wounded. The North Vietnamese 66th Regiment left behind 51 dead.[24]



U.S. wounded being moved to aid station during battle for Hill 882

While the action on Hill 882 was underway, tragedy struck Dog Company, 4/503. The unit was conducting road clearing operations around Ben Het while being accompanied by a CIDG Mike Force. While calling in an artillery fire mission, an error caused two rounds to fall on the company's position. Six Americans and three CIDG were killed outright and 15 paratroopers and 13 CIDG troops were wounded in the friendly fire incident.[25]

South Vietnamese units had also found plenty of action in the Đắk Tô area. On 18 November, on Hill 1416 northeast of Tan Canh, the ARVN 3/42nd Infantry found the PAVN 24th Infantry Regiment in well-fortified defensive positions. The elite, all-volunteer ARVN 3rd and 9th Airborne Battalions joined the action, attacking the hill from another direction. The ARVN forces took the hill on 20 November after vicious close-quarters fighting that claimed 66 South Vietnamese dead and another 290 wounded. The North Vietnamese left behind 248 of their own.[26]

RPT-PE-MARS                                        3rd Ind
SUBJECT:  Letter of Commendation

HEADQUARTERS, 299th Engineer Battalion (Combat), APO 96318, 25 August 1967

THRU:  Commanding Officer, HHC, 299th Engineer Battalion (C), APO 96318

TO:    Spk Norman E. Currie, RA 10725984, HHC, 299th Engineer Battalion
       (Combat), APO 96318

   1.  With profound pleasure I add my sincere congratulations for a job
well done to those of Major General Ploger, Commanding General, United States
Army Engineer Command (Provisional).

   2.  You are a credit to your unit, the 299th Engineer Battalion (Combat)
and the United States Army as a whole.  It is a distinct pleasure to have
men of your caliber in my command.  I wish you continued success in your
future endeavors.

   3.  A copy of Major General Ploger's letter with indorsement will be
placed in your 201 file.


                              WALTER G. WOLFE
                              LTC., CE
                              Commanding

SUBJECT: Letter of Commendation                    3rd Ind

HEADQUARTERS, 299th Engineer Battalion (Combat), APO 96118, 25 August 1967

THRU: Commanding Officer, HHC, 299th Engineer Battalion (C), APO 96118

TO: 4th Reason E. Durrie, RA 18785904, HHC, 299th Engineer Battalion (Combat), APO 96118

1. With profound pleasure I add my sincere congratulations for a job well done to those of Major General Ploger, Commanding General, United States Army Engineer Command (Provisional).

2. You are a credit to your unit, the 299th Engineer Battalion (Combat) and the United States Army as a whole. It is a distinct pleasure to have men of your caliber in my command. I wish you continued success in your future endeavors.

3. A copy of Major General Ploger's letter with indorsement will be placed in your 201 file.

WALTER G. WOLFE
LTC., CE
Commanding

AVGC-CG

19 June 1967

SUBJECT: Letter of Commendation

THRU:        Commanding Officer
             937th Engineer Group
             APO  96318

TO:          SP4 Norman R. Cassio
             RA 18 725 984
             HHC, 299th Engineer Battalion (Combat)
             APO  96318

    1.  It is indeed a pleasure to commend you for your outstanding accomplishment in being selected as the United States Army Engineer Command Vietnam (Provisional) Soldier of the Month for June 1967.

    2.  To be selected for this significant honor is a feat of which you can be proud.  The effort you put forth was reflected in your immaculate personal appearance and in your expert answers to questions asked by the Board of Sergeants Major.  This praiseworthy achievement marks you as an exceptional young soldier with a bright future.  I hope to receive reports of your continuing success in the months ahead.

    3.  My best wishes and those of the Engineer Command go with you as you take another step in your military career.

                                R. R. PLOGER
                                Major General, USA
                                Commanding

201 FILE COPY (19 JUNE 1967)

AVBC-CO (19 Jan 67)                    1st Ind
SUBJECT: Letter of Commendation

Headquarters, 18th Engineer Brigade, APO  96377

THRU: Commanding Officer, 937th Engineer Group (Cbt), APO  96318

THRU: Commanding Officer, 299th Engineer Battalion (Cbt),
        APO  96318

TO:  SP/4 Norman E. Carrio  RA 18 725 984, HHC, 299th Engineer
      Battalion (Cbt), APO  96318

    It gives me a great deal of pleasure to note your success
in being named the Soldier of the Month for the U. S. Army Engineer
Command.  My congratulations to you.  Keep up the good work.


                          HAROLD J. ST. CLAIR
                          Colonel, CE
                          Commanding

201 FILE COPY

MUCGSDANLE CARRIO, Norman S.        2nd End
RA 18 725 984
SUBJECT:  Soldier of the Month

HEADQUARTERS, 299th Engineer Battalion (Combat), APO 96318, 23 June 1967

THRU:  Commanding Officer, Headquarters Company, 299th Engineer Battalion
       (Combat), APO 96318

TO:    Specialist Four Norman S. Carrio, RA 18 725 984, Headquarters Company,
       299th Engineer Battalion (Combat)

       1.  With profound appreciation I add my sincere congratulations for
a job well done to those of General Duke, Commanding General, 18th Engineer
Brigade and Colonel Schucher, Commanding Officer, 937th Engineer Group.

       2.  Being selected "Soldier of the Month" four times during the month
of March is an exemplary achievement and is indicative of the high standards
you have set for yourself.  The manner in which this was accomplished is
truly commendable and is certainly keeping with our battalion motto, the
"Proven Pioneers".

       3.  You are a credit to your unit, the 299th Engineer Battalion (Combat)
and the United States Army as a whole.  It is a distinct pleasure to have
men of your caliber in my command.  I wish you continued success in your
future endeavors.

       4.  A copy of General Duke's letter with indorsement will be placed in
your 201 file.


                         WALTER G. WOLFE
                         LTC, CE
                         Commanding

RETURN TO CADRE, Herman E.              2nd Ind
RA 18 725 984
SUBJECT: Soldier of the Month

HEADQUARTERS, 299th Engineer Battalion (Combat), APO 96318, 23 June 1967

THRU:  Commanding Officer, Headquarters Company, 299th Engineer Battalion
       (Combat), APO 56318

TO:    Specialist Four Herman E. Garrio, RA 18 725 984, Headquarters Company,
       299th Engineer Battalion (Combat)

1.  With profound appreciation I add my sincere congratulations for
a job well done to those of General Duke, Commanding General, 18th Engineer
Brigade and Colonel Brusher, Commanding Officer, 937th Engineer Group.

2.  Being selected "Soldier of the Month" four times during the month
of March is an exemplary achievement and is indicative of the high standards
you have set for yourself.  The manner in which this was accomplished is
truly commendable and is certainly keeping with our battalion motto, the
"Proven Pioneers".

3.  You are a credit to your unit, the 299th Engineer Battalion (Combat)
and the United States Army as a whole.  It is a distinct pleasure to have
men of your caliber in my command.  I wish you continued success in your
future endeavors.

4.  A copy of General Duke's letter with indorsement will be placed in
your 201 file.


                              WALTER G. WOLFE
                              LTC, CE
                              Commanding

ENG-GO  (19 Jun 67)                    2nd Ind
SUBJECT:  Letter of Commendation

HEADQUARTERS, 937TH ENGINEER GROUP (COMBAT), APO  96318

THRU:  Commanding Officer, 299th Engineer Battalion (Combat), APO  96318

TO:  SP4 Norman E. Carrie, RA 18 725 984, HHC, 299th Engineer Battalion
(Combat), APO  96318

In passing on the well deserved words of commendation expressed by
Major General Ploger and Colonel St. Clair, I add my own congratulations
on your being selected United States Army Engineer Command Vietnam (Prov)
Soldier of the Month for June 1967. Through diligent effort on the part
of men like yourself, the 299th Engineer Battalion (Combat) and the 937th
Engineer Group (Combat) have become the fine organizations they are today.

Speaking for the entire Group, I convey our appreciation for your
dedicated devotion and inspiring contributions to our fine record of per-
formance.


                              R. C. MARSHALL
                              Colonel, CE
                              Commanding

AVTHACK (13 Jun 67)                1st Ind
SUBJECT: Letter of Commendation

Headquarters, 18th Engineer Brigade, APO 96377

THRU: Commanding Officer, 937th Engineer Group (Cbt), APO 96318

TEXT: Commanding Officer, 299th Engineer Battalion (Cbt),
       APO 96318

TO: SP/4 Norman B. Carrie  RA 18 723 954, HHC, 299th Engineer
    Battalion (Cbt), APO 96318

    It gives me a great deal of pleasure to note your success
in being named the Soldier of the Month for the U. S. Army Engineer
Command.  My congratulations to you.  Keep up the good work.


                        HAROLD J. ST. CLAIR
                        Colonel, CE
                        Commanding

201 FILE COPY

937-26 (19 Jun 67)     2nd Ind
SUBJECT: Letter of Commendation

HEADQUARTERS, 937TH ENGINEER GROUP (COMBAT), APO 96318

THRU: Commanding Officer, 299th Engineer Battalion (Combat), APO 96318

TO:   SP4 Warren R. Garvie, RA 18 725 981, HHC, 299th Engineer Battalion (Combat), APO 96318

In passing on the well deserved words of commendation expressed by Major General Ploger and Colonel St. Clair, I add my own congratulations on your being selected United States Army Engineer Command Vietnam (Prov) Soldier of the Month for June 1967. Through diligent effort on the part of men like yourself, the 299th Engineer Battalion (Combat) and the 937th Engineer Group (Combat) have become the fine organizations they are today.

Speaking for the entire Group, I convey our appreciation for your dedicated devotion and inspiring contributions to our fine record of performance.

R. C. MARSHALL
Colonel, CE
Commanding

350-69
SUBJECT: Soldier of the Month                    1st Ind

HEADQUARTERS, 937TH ENGINEER GROUP (COMBAT), APO 96318

THRU:  Commanding Officer, 299th Engineer Battalion (Combat), APO 96318

TO:  SP4 Norman E. Garrie, RA 18 725 924, HHC, 299th Engineer Battalion
     (Combat), APO 96318

     In passing on the well deserved words of commendation expressed by
Brigadier General Duke, I add my own congratulations on your being selected
18th Engineer Brigade Soldier of the Month for June 1967.  Through diligent
effort on the part of men like yourself, the 299th Engineer Battalion
(Combat) and the 937th Engineer Group (Combat) have become the fine organ-
izations they are today.

     Speaking for the entire Group, I convey our appreciation for your
dedicated devotion and inspiring contributions to our fine record of per-
formance.



                              E. P. BRAUCHER
                              Colonel, CE
                              Commanding

[illegible]

SUBJECT: Soldier of the Month                    1st Ind

HEADQUARTERS, 937TH ENGINEER GROUP (COMBAT), APO 96318

TO:  Commanding Officer, 299th Engineer Battalion (Combat), APO 96318

TO:  SP4 Herman K. Garcie, RA 18 725 924, HHC, 299th Engineer Battalion
     (Combat), APO 96318

     In passing on the well deserved words of commendation expressed by
Brigadier General Duke, I add my own congratulations on your being selected
18th Engineer Brigade Soldier of the Month for June 1967.  Through diligent
effort on the part of men like yourself, the 299th Engineer Battalion
(Combat) and the 937th Engineer Group (Combat) have become the fine organ-
izations they are today.

     Speaking for the entire Group, I convey our appreciation for your
dedicated devotion and inspiring contributions to our fine record of per-
formance.

                                   E. P. BRAUCHER
                                   Colonel, CE
                                   Commanding

12 June 1967

AVDC-CG

SUBJECT: Soldier of the Month

TO:     SP/4 Norman E. Carrio RA 18 725 934
        HHC, 299th Engineer Battalion (Combat)
        APO 96238

    I congratulate you on having been selected among the men of the 18th Engineer Brigade as the Soldier of the Month, for June 1967.  Your selection was based on your military bearing, knowledge and your capabilities.  Your performance of duty and motivation are attributes of a fine soldier, sought after by many, but possessed by only a few.

    I hope that you continue the fine record you have established and continue to be an inspiration to the men surrounding you.

    This letter of commendation will be made an official part of your 201 file.

              C. M. DUKE
              Brigadier General, USA
              Commanding

AVDC-CG                                               12 June 1967

SUBJECT:  Soldier of the Month

TO:           SP/4 Norman E. Carrio RA 18 725 934
              HHC, 299th Engineer Battalion (Combat)
              APO 96238


        I congratulate you on having been selected among the
men of the 18th Engineer Brigade as the Soldier of the
Month, for June 1967.  Your selection was based on your
military bearing, knowledge and your capabilities.  Your
performance of duty and motivation are attributes of a
fine soldier, sought after by many, but possessed by only
a few.

        I hope that you continue the fine record you have
established and continue to be an inspiration to the men
surrounding you.

        This letter of commendation will be made an official
part of your 201 file.


                              C. M. DUKE
                              Brigadier General, USA
                              Commanding

DEPARTMENT OF THE ARMY
Headquarters, 937th Engineer Group (Combat)
APO 96318

ENG-CO

SUBJECT:  Commendation

THRU:    Commanding Officer
         299th Engineer Battalion (Combat)
         APO 96318

TO:      SP4 Norman E. Carrie
         RA 18 725 984
         HHC, 299th Engineer Battalion (Combat)
         APO 96318

1.  I take great pleasure in commending you for having been chosen
as Soldier of the Month of the 937th Engineer Group (Combat) for the
month of June 1967.

2.  In achieving this honor you were in competition with personnel of
four battalions and attached units.  You were selected on the basis of your
appearance, military courtesy and your knowledge of military subjects.  In
all of them you were outstanding.

3.  Soldiers of your caliber are a credit to this Group, the Corps of
Engineers, and the military service as a whole.  You have set an example
which all soldiers would do well to follow.  I am proud to have you as a
member of my command and I wish you the best of good fortune in your future
endeavors.

4.  A copy of this correspondence will be made a part of your military
201 file.

                              E. P. BRAUCHER
                              Colonel, CE
                              Commanding

Headquarters, 937th Engineer Group (Combat)
APO 96318

EGB-CO

SUBJECT: Commendation

THRU:     Commanding Officer
          299th Engineer Battalion (Combat)
          APO 96318

TO:       SPA Norman E. Carrie
          RA 18 725 984
          HHC, 299th Engineer Battalion (Combat)
          APO 96318

1. I take great pleasure in commending you for having been chosen as Soldier of the Month of the 937th Engineer Group (Combat) for the month of June 1967.

2. In achieving this honor you were in competition with personnel of four battalions and attached units. You were selected on the basis of your appearance, military courtesy and your knowledge of military subjects. In all of them you were outstanding.

3. Soldiers of your caliber are a credit to this Group, the Corps of Engineers, and the military service as a whole. You have set an example which all soldiers would do well to follow. I am proud to have you as a member of my command and I wish you the best of good fortune in your future endeavors.

4. A copy of this correspondence will be made a part of your military 201 file.

                              E. P. BRAUCHER
                              Colonel, CE
                              Commanding

ZGG-EYEE-CE                        1st Ind
SUBJECT:  Commendation

HEADQUARTERS, 299th Engineer Battalion (Combat), APO 96318, 7 June 1967

THRU:  Commanding Officer, Headquarters Company, 299th Engineer Battalion
       (Combat), APO 96318

TO:    SP4 Norman E. Carrio, RA 18725984, Headquarters Company, 299th
       Engineer Battalion (Combat), APO 96318

       It is with great pleasure to forward the attached letter of
commendation and to extend my sincere congratulations on the occasion
of your having been chosen as Soldier of the Month for the 937th
Engineer Group (Combat) for the month of June 1967.

       By your actions, you have proven yourself for your competition with
other men of the 937th Engineer Group (Combat). It is a distinct pleas-
ure as your commanding officer to commend you. Again, congratulations
and best of luck to you and success in all your future pursuits.

       A copy of this letter will be placed in your field 201 file.

                              [illegible stamp]

SUBJECT:  Commendation

HEADQUARTERS COMPANY, 299TH ENGINEER BATTALION (COMBAT), APO 96318, 12 June 67

TO:    SP4 Norman E. Carrio, RA 18725984, Headquarters Company, 299th
       Engineer Battalion (Combat), APO 96318

    1.  It is with a great deal of pleasure that I forward the attached letter
of commendation to you upon your having been chosen Soldier of the Month of the
937th Engineer Group (Combat) for the month of June.

    2.  In achieving this honor you have demonstrated a high degree of excellence
and reflected great credit upon yourself, your unit and the United States Army.
I am proud to have you as a member of this unit.

    3.  A copy of this letter will be placed in your 201 file.

                              THOMAS A CONNOR
                              1LT, CE
                              Commanding

RECEIVED
MAY 1 3 2013
MARK TURNBULL
County Clerks Office
Montgomery County TX

) VIEW
( ) REQUEST ONLY                              Case No. 82 - 3105                    Investigated: _ Ellis Mozar _____

5800 West Tidwell, Houston, Texas

05/21/1982                                                    2:20 a.                    ( )
                                                              Time                       ( ) Found
5800 West Tidwell, Houston, Texas
Place of Death                                                                           City/County     Precinct

M.E. Notified:          05/21/1982                                                                       2:3
                        Date
5800 West Tidwell
Place of Inquest                                                25/21/1982                                3:0
                                                                Date
Houston Police Department Officer Burak Badge 2946 Shift 5811
Informant
Henry
Next of Kin
Myra Kendall                                     Address                                  Father
Next of Kin Notified by                                                                   Relat
                                                 Date                      Time           Tele
Personal Physician
                                                 Address                                  Tele

Location, Position, and Surroundings of Body:
The decedent was lying on his back on the ground on the median.

Clothing:    The decedent was wearing thongs, jeans, belt and shirt.

Clothing Released to:
                                                            Date

Information:
The decedent, one white male, one black male and two white females were
in a Datsun, license UJF 150, and the suspect Norman E. Carrio, 6010
Black Maple was in a Chevrolet Suburban, license SG 8660, stopped the
decedent's car because the two white females were hollering rape and that
they were being kidnapped.  The suspect stopped the decedent's car with
a gun, blue Browning 9 millimeter automatic, serial number not available,
and ordered everyone out of the car.  The black male and the two white
females jumped out and ran.  The suspect shot the decedent and the other
unknown white male when they tried to jump him.  The unknown white male
was taken to an unknown hospital.

The Houston Police Department case number was 30126982.

M.E. Photos (x)Yes   ( )No      Police Agency     Houston Police Department      Case No.
Property:     The property consisted of $4.62, wallet and contents.              ( ) Reques
Funeral Home Transporting Decedent                                               (x) Dispat
Northwoods Funeral Directors, Houston, Texas
Funeral Home Receiving Decedent
Olson-Holzmuter Funeral Home - Removal to Stoughton, Wisconsin



7022 1670 0001 1560 5078

U.S. POSTAGE PAID
$10.44

Havelock Dr.
Spring, TX 77386

1346 Havelock Dr.
Spring, TX 77386

1 Forma Pauris
1 TX OR IM-266
1 ADA Scott Durfee letter
1 Houston Chronicle article
1 Camio Profile

Clerk
U.S. District Court
PO BX 61010
Houston TX 77208

United States Courts
Southern District of Texas
FILED

JAN 30 2023

Nathan Ochsner, Clerk of Court